IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANNA MARIE GOODELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-00947-CV-RK |
| | ) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE ALJ'S DECISION

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA's") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED.**

### Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ found that Plaintiff has severe impairments of depression and anxiety; that the Plaintiff has non-severe impairments of diabetes mellitus, essential hypertension, gastroesophageal reflux disease, and mixed hyperlipidemia; and that Plaintiff's bladder problems, shoulder pain, hip pain, and back pain are not medically determinable impairments. The ALJ also found that none of Plaintiff's impairments meet or medically equal a listed impairment under 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following limitations:

> limited to performing simple, routine, and repetitive tasks, which may require detailed instructions, but do not involve complex tasks; the work should be in an environment that is free of fast-paced production requirements; the work should involve only simple workplace decisions with few, if any, workplace changes; the claimant should have no public interaction; and she can work around coworkers throughout the day, but with only occasional interaction with co-workers.

(Tr. 21.) The ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy, specifically the jobs of linen room attendant, industrial cleaner, and kitchen helper. The ALJ then concluded that Plaintiff is not disabled.

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erred in (1) evaluating three medical opinions when assessing the RFC and (2) concluding at "step five" of the sequential evaluation process that the stated RFC would allow her to do the job of linen room attendant. The Court disagrees.

**I.     Evaluation of Medical Opinions**

Plaintiff argues that the ALJ erred in assessing the opinions of (1) Lida Santiago, her treating licensed professional counselor ("LPC"); (2) Mark Altomari, Ph.D., a non-examining state agency psychological consultant; and (3) Nancy Caesar, M.D., a non-examining state agency physical consultant.

**A.     Ms. Santiago (LPC)**

In a treatment note from an annual review and assessment, Ms. Santiago stated that Plaintiff "experiences debilitating depression and anxiety" and that due to her "past, current, and ongoing

2

psychiatric symptoms, [she] is unable to maintain employment and take care of household duties including cleaning and completing laundry." (Tr. 356.) Ms. Santiago stated that she did not expect Plaintiff's mental impairments "to abate within the next year," and she recommended that Plaintiff continue receiving medication, counseling, and help from an in-home assistant. (*Id.*)

For "non-medical" sources and medical sources that are deemed not "acceptable" by the SSA, "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f); *see also Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (stating that the opinions of therapists must be considered even though they are not considered "acceptable medical sources"). However, "an ALJ is not required to discuss every piece of evidence submitted," and "failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (affirming despite the ALJ's failure to explicitly discredit a treating physician's opinion where it was apparent the opinion was considered, given that the ALJ discussed the doctor's medical evaluations and treatment notes).

Here, the ALJ's discussion of the evidence sufficiently suggests the ALJ considered and rejected Ms. Santiago's opinion. In dismissing the use of "GAF" scores (i.e., "Global Assessment of Functioning"), the ALJ specifically rejected the GAF score given by Ms. Santiago—and cited the same page in the record that contains Ms. Santiago's opinion. (*See* Tr. 23 (citing Tr. 356).) Furthermore, while Ms. Santiago recommended that Plaintiff continue to receive services from an in-home personal care attendant, the ALJ rejected additional limitations on the RFC based on the presence of an in-home assistant. (Tr. 22.) Plaintiff acknowledged no longer needing an in-home assistant for physical reasons (the original reason the assistant was there). (*Id.*) To the extent the in-home assistant could still be necessary due to Plaintiff's hoarding, the ALJ found that the hoarding does "not directly translate into significant work-related limitations." (*Id.*) For these reasons, like in *Black*, "it is highly unlikely that the ALJ did not consider and reject" Ms. Santiago's opinion. 143 F.3d at 386.

### B. Dr. Altomari

Plaintiff first argues that the ALJ failed to adequately explain inconsistencies between the RFC and the limits on Plaintiff's mental capabilities recognized in Dr. Altomari's opinion. The Court disagrees.

"The RFC assessment must always consider and address medical source opinions." SSR 96-8P, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*; *see, e.g.*, *Shay v. Comm'r of Soc. Sec. Admin.*, No. 4:18-00970-CV-RK, 2020 WL 30326, at *2 (W.D. Mo. Jan. 2, 2020) (remanding for an explanation of why the limits recognized by a treating physician were not accounted for in the RFC).

Here, unlike in *Shay*, the Court is not left wondering how the RFC squares with Dr. Altomari's opinion. Plaintiff suggests there is a conflict between the RFC's statement that Plaintiff can handle "detailed instructions" and Dr. Altomari's opinion that she "has the ability to understand, remember and carry out *at least* short and simple instructions." (Tr. 185 (emphasis added).) These two statements simply do not conflict, especially given that Dr. Altomari also said Plaintiff is "[n]ot significantly limited" in her ability to carry out detailed instructions. (Tr. 186.)

There is also no conflict between the RFC and Dr. Altomari's statement that Plaintiff is "moderately limited" in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. at 185.) A limitation is moderate when there is a "fair" level of functioning independently, appropriately, and effectively in the relevant category. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 66164 at § 12.00F(2). Here, the RFC is consistent with a fair ability to perform at a consistent pace and without unreasonable breaks. The ALJ explicitly acknowledged that Plaintiff "has no more than a moderate limitation" in concentrating, persisting, or maintaining pace and that "the work should be in an environment that is free of fast-paced production requirements." (Tr. 20-21.)

The ALJ also adequately explained why the RFC included a *greater* limit on social functioning than Dr. Altomari recognized (i.e., a moderate limitation instead of a mild one). (Tr. 20, 182.) The ALJ explained that Plaintiff testified during the hearing that she has periodic panic attacks, difficulties getting along with other people, problems interacting with people at the grocery

4

store, and a coping mechanism that involves "pretend[ing] that she is someone else." (Tr. 20.) This is sufficient to show why the ALJ believed additional limitations were necessary.

Finally, Plaintiff argues that Dr. Altomari's opinion is not substantial evidence to support the ALJ's decision, and additional record development is necessary, because (1) he is a non-examining state agency consultant and (2) his opinion was approximately a year-and-a-half old when the ALJ rendered her decision in May 2018. The Court disagrees.

"It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment," including that of a non-examining consultant. *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (quotation marks and citations omitted). An RFC must be supported by "some medical evidence of the claimant's ability to function in the workplace," but "[t]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations and quotation marks omitted). However, an ALJ generally may not use dated evidence to justify outright ignoring subsequent evidence that supports the Plaintiff's subjective complaints. *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995).

Here, Plaintiff fails to point to any subsequent evidence that she believes conflicts with Dr. Altomari's opinion. (Doc. 13 at 12-13, Plaintiff's Br.) To the contrary, the ALJ considered Dr. Altomari's opinion along with other, more recent evidence to support her assessment. Specifically, the ALJ noted that Dr. Altomari's opinion is consistent with Plaintiff's unremarkable mental status examinations and self-reported activities of daily living, including those that she mentioned during the March 2018 hearing before the ALJ. (Tr. 19, 23.) The ALJ also observed that Plaintiff's mental health treatment was largely conservative and that she improved with medication. (Tr. 22.)

These findings are supported by the record. Plaintiff testified at the hearing before the ALJ that she improved "quite a bit" with treatment and that she drives every day, goes to the grocery store and doctor appointments, visits friends and her mother, and takes care of her dog. (Tr. 152-53, 157, 171.) *See Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (substantial evidence supported the RFC where the claimant was not restricted in daily activities). Plaintiff's treatment for anxiety and depression was limited to therapy and medication without hospitalization, and the record reveals normal mental status exams as late as February 2018. (*E.g.*, Tr. 479.) *See Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (mild or unremarkable objective medical findings and other medical evidence may constitute evidence sufficient to support an RFC finding); *Moore*

5

*v. Astrue*, 572 F.3d 524, 525 (8th Cir. 2009) (legitimate for an ALJ to consider a plaintiff's limited and conservative treatment).

    **C.    Dr. Ceasar**

The ALJ gave significant weight to Dr. Ceasar's opinion that Plaintiff's physical impairments are non-severe. Plaintiff argues that Dr. Ceasar's opinion is not substantial evidence to support this decision because the opinion was issued approximately a year-and-a-half before the ALJ's decision and because Dr. Ceasar is not qualified, in that she specializes in providing medical care for premature babies.

Just as with Dr. Altomari's opinion, Plaintiff fails to point to any subsequent evidence that she believes conflicts with Dr. Ceasar's opinion. (Doc. 13 at 17-18, Plaintiff's Br.) The ALJ noted that Dr. Ceasar's opinion is consistent with Plaintiff's mostly normal progress reports, examination findings, and self-reported activities of daily living, including those that she mentioned during the March 2018 hearing before the ALJ. (Tr. 19, 23.) This is supported by the record. (*E.g.*, Tr. 152-53, 157, 171 (activities of daily living); Tr. 342, 441, 489, 514 (physical exams mostly normal).) Furthermore, Dr. Ceasar is a medical doctor (Tr. 184) and is thus an "acceptable" medical source under SSA regulations. *See* 20 C.F.R. § 416.902(a)(1) ("Acceptable medical source means a medical source who is a . . . [l]icensed physician (medical or osteopathic doctor) . . . .").[1]

**II.    Substantial Evidence to Support the ALJ's finding at Step Five**

At step five of the ALJ's sequential evaluation process, the SSA is tasked with providing evidence that work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(c), 416.920(a)(4)(v), 416.960(c). The ALJ found, based on the testimony of a vocational expert ("VE"), that Plaintiff could do the jobs of linen room attendant, industrial cleaner, and kitchen helper. (Tr. 24, 173-74.) Plaintiff argues that the ALJ erred in finding that she could do the job of linen room attendant, as defined by Dictionary of Occupational Titles ("DOT"), because her RFC limits her to making only simple workplace decisions with few, if any, workplace changes.

---

[1] The Court also rejects Plaintiff's argument that the RFC "is additionally unsupported" because it does not limit her interaction with supervisors. Plaintiff did not mention any problems with supervisors in her function report despite mentioning having trouble getting along with others, and she stated that she is "usually subservient" to authority figures and does "what [she] is told" by them. (Tr. 289-91.) Dr. Altomari also stated that Plaintiff could relate appropriately to supervisors, and the ALJ gave significant weight to this opinion. (Tr. 23, 186.)

Although the Court agrees that there is an apparent conflict between the RFC and the DOT's definition of linen room attendant, the error is harmless due to the ALJ's additional finding that Plaintiff could do the jobs of industrial cleaner and kitchen helper. According to the DOT, a linen room attendant must have "Level 3" reasoning skills—meaning the worker must be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT Code 222.387-030, 1991 WL 672098. Here, the ALJ failed to explain the apparent tension between Plaintiff's low tolerance for workplace changes and the DOT's requirement that a linen room attendant be able to deal with problems involving several concrete variables. *See Gilbert v. Berryhill*, No. 3:18CV00198 PSH, 2019 WL 3416869, at *4 (E.D. Ark. July 29, 2019) ("Gilbert's limitations, including the ability to respond to minor changes, seem clearly to fall short of level 3 reasoning abilities, such as the ability to deal with problems involving several concrete variables.").[2]

However, the ALJ's error on this issue was harmless. Plaintiff does not contest the ALJ's finding that she could do the jobs of industrial cleaner and kitchen helper, both of which require only Level-2 reasoning. The vocational expert testified that there are over 2.5 million of these jobs in the national economy. (Tr. 174.) *See O'Connell v. Saul*, No. 18-CV-2072-KEM, 2019 WL 4784613, at *12 (N.D. Iowa Sept. 30, 2019) ("District courts in the Eighth Circuit . . . have held that an inconsistency between the VE's testimony and the DOT is harmless if at least one job remains the claimant can perform that is consistent with the DOT, and the VE's testimony establishes that this job exists in significant numbers in the national economy.").

---

[2] The cases cited by the SSA addressed different factual scenarios from this case. *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). In *Hillier*, the Eighth Circuit held that a plaintiff who could "understand, remember, and follow simple, concrete instructions" could still do the Level-3 job of cashier because she had previously held a job as a cashier. 486 F.3d at 367. In this case, there is no evidence that Plaintiff has ever done the job of linen room attendant. In *Renfrow*, the plaintiff argued that she could not do Level 3 jobs because she could not do "complex" work. 496 F.3d at 921. The Eighth Circuit rejected this argument because the jobs in question were both "unskilled" and thus "not complex." *Id.* Here, plaintiff's argument is different—that she does not have the ability to deal with problems involving several concrete variables as required by the DOT because, according to her RFC, she can handle only a few, if any, workplace changes. Unlike in *Hillier* and *Renfrow*, there is an apparent conflict between the RFC and the DOT.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the ALJ's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

                                                  s/ Roseann A. Ketchmark
                                                  ROSEANN A. KETCHMARK, JUDGE
                                                  UNITED STATES DISTRICT COURT

DATED:  March 31, 2020